# Illinois Official Reports

## Appellate Court

---

### *People v. Meyers*, 2018 IL App (1st) 140891

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON MEYERS, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-14-0891 |
| Filed<br>Modified upon denial<br>of rehearing | December 3, 2018<br><br>March 4, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-13562; the Hon. Stanley J. Sacks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Christopher L. Gehrke, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE GRIFFIN delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Pierce concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1     Chicago police officers Jason Bala, Francisco Iza, and Marc Debose were on patrol in an unmarked squad car when they saw a grey car run a red light. When the officers pulled the car over, defendant Brandon Meyers and codefendant Riley Fleming exited and fled on foot. Officer Iza and Officer Debose chased after defendant and Fleming as they ran across a street and into a vacant lot. Fleming ran through the lot diagonally and down a gangway, successfully evading Officer Debose. Defendant tripped over the curb before reaching the vacant lot but got up and kept running. About halfway through the vacant lot, defendant allegedly turned to his right, pulled a handgun, and fired a single shot. Officer Iza returned fire. Defendant fell to the ground and dropped his gun. Officer Iza placed defendant under arrest.

¶ 2     As it turned out, defendant and Fleming were in the process of fleeing an armed robbery when they ran the red light in the grey car and were pulled over. The robbery victims positively identified defendant and Fleming, and they were charged with a host of criminal offenses related to the armed robbery. None of the charges related to the armed robbery are under consideration here, and Fleming is not a party to this appeal.

¶ 3     In connection with defendant's alleged discharge of a firearm at Officers Iza and Debose, he was separately charged with four counts of attempted first degree murder (counts I through IV) (720 ILCS 5/8-4(a), 9-1(a) (West 2008)) and two counts of aggravated discharge of a firearm in the direction of a peace officer (counts V and VI) (720 ILCS 5/24-1.2(a)(3) (West 2008)). A jury acquitted defendant of the attempted first degree murder charges (720 ILCS 5/8-4(a), 9-1(a) (West 2008)) but found defendant guilty of both counts of aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)). The trial court sentenced defendant to two concurrent 19-year terms of imprisonment.

¶ 4     Defendant appeals his convictions for aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)). He argues that (1) the evidence failed to prove defendant guilty beyond a reasonable doubt, (2) the trial court abused its discretion when it admitted testimonial and photographic evidence of a bullet hole in the siding of a garage at the scene of the shooting, (3) the trial court erred when it limited defendant's cross-examination, and (4) the prosecutor's closing arguments deprived defendant of a fair trial. We affirm.

¶ 5                                    BACKGROUND

¶ 6     On July 1, 2009, Chicago police officers Bala, Iza, and Debose were on patrol in an unmarked squad car when they saw a grey car run a red light. Officer Bala made a U-turn, activated his emergency lights, and pulled the car over. Defendant and codefendant Riley Fleming exited the car. As defendant exited, Officer Bala saw him place a handgun in his waistband. Officer Bala yelled to his fellow officers that defendant was armed. Fleming and defendant fled on foot, and a chase ensued: Officer Bala followed the driver in his squad car, while Officer Iza and Officer Debose pursued defendant and Fleming on foot.

¶ 7        With officers close behind, defendant and Fleming ran across a street and headed for a vacant lot. Fleming, followed by Officer Debose, ran through the lot diagonally and down a gangway, successfully evading capture. Defendant, followed by Officer Iza, tripped over the curb before reaching the lot but quickly got up and kept running. When defendant reached the lot's halfway point, he stopped, turned to his right, and fired one shot from a gun held in his left hand. Officer Iza returned fire, and defendant fell to the ground. Defendant's gun fell from his hand. Officer Iza placed defendant under arrest, and a Chicago police detective placed paper bags over defendant's hands to preserve gunshot residue evidence. Defendant was then transported to a hospital. Fleming was later found hiding under a car and placed under arrest.

¶ 8        Shortly after defendant and Fleming's arrest, two individuals approached police officers in the vicinity of the shooting to report that they had recently been robbed at gunpoint. Defendant and Fleming were positively identified as the robbers and charged, as codefendants, with various criminal offenses related to the armed robbery. Defendant was separately charged with four counts of attempted first degree murder of Officer Iza and Officer Debose (counts I through IV) (720 ILCS 5/8-4(a), 9-1(a) (West 2008)) and two counts of aggravated discharge of a firearm in the direction of a peace officer (counts V and VI) (720 ILCS 5/24-1.2(a)(3) (West 2008)). Defendant and Fleming[1] proceeded to a consolidated trial before a single jury.

¶ 9        We highlight only those facts necessary to the resolution of the issues raised in defendant's appeal.

¶ 10       At defendant's trial, Officer Debose testified that he and his fellow officers pulled over a grey Ford Focus for running a red light. Defendant and Fleming exited the car, and Officer Debose heard Officer Bala yell that defendant had a gun. Defendant and Fleming fled on foot, and a chase ensued: Officer Debose followed Fleming while Officer Iza followed defendant. Officer Debose testified that he announced his office "9 or 10 times," but defendant continued to run. Defendant had his arms at his waistband, "like he had something there." After defendant tripped over the curb, Officer Debose saw defendant get up and "put his hands back towards his waistband." Though his focus was directed to Fleming, who took a "hard right" through the vacant lot and ran down a gangway, Officer Debose testified that he heard a single gunshot and then a "whizzing sound." Officer Debose ducked, got up, and turned to see defendant holding a gun in his left hand. Defendant's right hand was on his left wrist. Officer Debose testified that he heard Officer Iza return "four or five shots" at defendant and saw him fall to the ground. Officer Debose admitted that he did not see defendant fire his gun.

¶ 11       Officer Iza testified that he never saw a gun in defendant's waistband but did see defendant hold onto his side as he ran. Officer Iza saw defendant trip over the curb, get up, and keep running. When defendant reached the vacant lot's halfway point, Officer Iza testified that defendant turned to the right and fired one shot at him from a gun held in defendant's left hand. Officer Iza testified that he was within 10 feet of defendant when he saw the muzzle of defendant's gun "flash" and then heard a "whizzing sound." Officer Iza returned "three or four shots" at defendant and saw defendant fall to the ground. Officer Iza testified that he then placed defendant under arrest.

¶ 12       During the direct examinations of Officer Iza and Officer Debose, the State played a surveillance video that had recorded part of the foot chase. The video captured Fleming and

[1]Fleming is not a party to this appeal, but his convictions were, nevertheless, affirmed on appeal. See *People v. Fleming*, 2014 IL App (1st) 113004.

defendant running across the street with Officers Iza and Debose close behind. However, the video was stationary and did not capture the shooting. The trial court permitted the officers to narrate the events depicted in the video, but when defendant asked Officer Debose to describe the events captured on the video, the State objected. The trial court sustained the State's objections and explained that the video "speaks for itself." The trial continued.

¶ 13 The State introduced a photograph of a hole in the siding of a garage into evidence at trial. Officer Iza testified that the hole depicted in the photograph was the "entry wound" of the bullet discharged from defendant's gun. Officer Iza further testified that the bullet hole aligned with the trajectory of the shot fired by defendant and that the hole "looked like it was fresh" because he did not observe any "rust" around the hole. Defendant repeatedly objected to the State's line of questioning as speculative, but the trial court overruled defendant's objections. On cross-examination, Officer Iza testified that he had "no way of knowing" whether the bullet discharged from defendant's gun created the hole depicted in the photograph.

¶ 14 Edwin Huels, an evidence technician for the Chicago Police Department, was assigned to recover evidence from the scene of the shooting and testified for the State. Technician Huels testified that he photographed the bullet hole in the siding of the garage and described it as "free of rust and debris," but he admitted that he did not access the garage or recover the bullet. Technician Huels did, however, recover defendant's firearm and four 9-millimeter cartridge cases from the scene of the shooting. Each bullet casing was later determined by a forensic scientist to have been fired from Officer Iza's gun. The bullet casing discharged from defendant's gun was not recovered.

¶ 15 Robert Berk, a trace evidence analyst, testified that he received and analyzed the gunshot residue kit administered to defendant's hands. Analyst Berk testified that in order to find a positive presence of gunshot residue, he must find three "unique" gunshot residue particles: a unique gunshot residue particle is one composed of "lead, barium and antimony" elements. Analyst Berk found three unique particles on defendant's right hand and two unique particles on defendant's left hand. Analyst Berk testified that defendant's right hand tested positive for the presence of gunshot residue, which allowed him to make three conclusions: (1) defendant discharged a firearm, (2) defendant contacted an item that had gunshot residue on it, or (3) defendant had his hands in the environment of a firearm that was discharged. Analyst Berk testified that defendant's left hand did not test positive.

¶ 16 The State rested its case, and defendant moved for a directed verdict. The trial court denied defendant's motion. Defendant rested without calling any witnesses, and the parties proceeded to closing arguments.

¶ 17 During closing argument, the prosecutor commented that the photograph of the bullet hole in the garage was "circumstantial evidence" of defendant's firing a gunshot in the direction of both Officer Iza and Officer Debose: "The whiz of the bullet goes right between [Officers Iza and Debose], lands right there in that garage." The prosecutor also commented on the gunshot residue evidence, indicating that the gunshot residue kit administered to defendant's hands identified him as left-handed. Defendant objected, arguing that the State's comment lacked an evidentiary basis in the record. The trial court sustained defendant's objection and instructed the jury to "disregard the comments."

¶ 18 The prosecutor then highlighted the results of analyst Berk's analysis, commenting that she "couldn't call" defendant's left hand "a positive" for the presence of gunshot residue "because there were two unique particles of gunshot residue, *** [b]ut it's certainly not negative. It's

- 4 -

certainly[,] I submit to you[,] consistent with having fired a gun from his left hand." Defendant did not object.

¶ 19 The jury found defendant guilty of two counts of aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)). The jury found defendant not guilty of attempted first degree murder of Officer Iza and Officer Debose (720 ILCS 5/8-4(a), 9-1(a) (West 2008)). Defendant filed a motion for a new trial, which was denied. The trial court sentenced defendant to two concurrent 19-year terms of imprisonment. Defendant appeals his convictions.

¶ 20                                                    JURISDICTION
¶ 21 On March 4, 2011, a jury found defendant guilty of two counts of aggravated discharge of a firearm in the direction of a peace officer. 720 ILCS 5/24-1.2(a)(3) (West 2008). The trial court sentenced defendant on October 3, 2011. On July 12, 2013, defendant filed a postconviction petition alleging that his trial counsel was ineffective for failing to file a notice of appeal. On March 11, 2014, the trial court granted defendant leave to file a late notice of appeal and dismissed his postconviction petition without prejudice. Defendant filed his notice of appeal on the same day. We have jurisdiction to hear defendant's appeal. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Feb. 6, 2014); Ill. S. Ct. R. 606 (eff. July 1, 2014).

¶ 22                                                      ANALYSIS
¶ 23 The issues on appeal are (1) whether the evidence presented at trial was sufficient to convict defendant of aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)) beyond a reasonable doubt, (2) whether the trial court abused its discretion when it allowed Officer Iza and technician Huels to testify about the bullet hole in the siding of the garage and admitted the photograph of the bullet hole into evidence, (3) whether the trial court erred when it limited defendant's cross-examination of Officer Debose, and (4) whether the prosecutor's closing arguments deprived defendant of a fair trial.

¶ 24 We review the evidence presented at defendant's trial in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)) beyond a reasonable doubt. *People v. Johnson*, 2014 IL App (1st) 120701, ¶ 21; *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); 720 ILCS 5/24-1.2(a)(3) (West 2008). It is the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of defendant's guilt. *People v. Jones*, 2017 IL App (1st) 143403, ¶ 26.

¶ 25 In order to convict defendant of aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)), the jury was required to find that the State proved all of the elements of the offense beyond a reasonable doubt: defendant intentionally or knowingly discharged a firearm in the direction of a person he knew to be a peace officer while that officer was executing his official duties.

¶ 26    We hold that the evidence presented at defendant's trial was sufficient to convict. The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Here, the testimony of Officer Iza or Officer Debose alone could have supported defendant's convictions.

¶ 27    At trial, Officer Iza testified that he was within 10 feet of defendant when he saw the muzzle of defendant's gun flash and heard the bullet "whizz" past him. Officer Debose testified that he was standing three feet from Officer Iza when he heard defendant fire a shot, the bullet "whizz" past him, and Officer Iza return fire. Officer Debose further testified that he saw defendant holding a gun after the shot was fired. Defendant's gun was recovered at the scene.

¶ 28    The jury credited the testimony of the officers and, after hearing all the evidence and the parties' arguments based upon that evidence, convicted defendant of the charged offenses. See *People v. Daheya*, 2013 IL App (1st) 122333, ¶ 76 (credible eyewitness testimony that defendant fired four shots into vehicle sufficient alone to convict defendant of aggravated discharge of a firearm). The evidence upon which the jury based its decision was not unreasonable, improbable, or unsatisfactory and did not raise a reasonable doubt of defendant's guilt.

¶ 29    We note, at the outset, that Officer Iza's testimony that he saw defendant fire his gun and Officer Debose's testimony that he saw defendant holding his gun *after* the shot was fired reflects an evidentiary disparity, not an evidentiary insufficiency. The jury could have found defendant guilty of the offenses beyond a reasonable doubt based on the direct or circumstantial evidence presented by Officers Iza or Debose, respectively. *People v. Fleming*, 2013 IL App (1st) 120386, ¶ 74 (circumstantial evidence is sufficient to sustain a criminal conviction).

¶ 30    Nevertheless, defendant argues that this evidentiary disparity is consistent with the hypothesis that Officer Debose heard Officer Iza shoot first and turned to see defendant with his gun drawn in self-defense. The jury rejected this hypothesis, and so do we. See *People v. Milka*, 336 Ill. App. 3d 206, 228 (2003) (the jury decides whether or not to accept a reasonable hypothesis of innocence and elevate it to the status of reasonable doubt).

¶ 31    Defendant also claims that Officer Debose's testimony was inconsistent and demonstrated that Officer Iza shot first. Insofar as there was an inconsistency as to whether Officer Debose saw defendant on the ground or upright after he heard the single shot fired, it was resolved by the jury against defendant. *People v. Cunningham*, 212 Ill. 2d 274, 284 (2004) (despite inconsistency and flaws, witnesses' testimony as a whole was not unworthy of belief); *People v. Gray*, 2017 IL 120958, ¶ 47 (even contradictory testimony does not necessarily destroy the credibility of a witness, and it is the task of the trier of fact to determine when, if at all, a witness testified truthfully).

¶ 32    Defendant argues that the physical and forensic evidence presented at trial contradicted the officers' testimony and raised reasonable doubt of his guilt. Specifically, defendant argues that (1) the surveillance video showed he did not have a gun, (2) he never fired his gun because the only bullet casings recovered from the scene matched Officer Iza's gun and the number of casings recovered corresponded to the number of shots Officer Bala heard as he arrived on scene, and (3) the gunshot residue evidence contradicted the officers' testimony that he fired his gun from his left hand.

¶ 33    Defendant's first argument is, essentially, that the officers fabricated their testimony altogether. We reject this argument. The jury watched the surveillance video in open court and was in the best position to judge the credibility and accuracy of the officers' testimony. We will not substitute our judgment for that of the jury. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000) (reviewing court will not substitute its judgment for that of the trier of fact on the credibility of witnesses).

¶ 34    Defendant's next argument also raises questions that the jury decided against him: (1) whether there was a connection between the four bullet casings ejected from Officer Iza's gun and Officer Bala's testimony that he heard four shots fired upon arriving at the scene and (2) whether this connection gave rise to reasonable doubt that defendant fired a gun. We decline defendant's invitation to draw a connection between the evidence that was reasonably not drawn by the jury after hearing the evidence presented and ascribe to that connection a reasonable doubt of defendant's guilt. *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007) (reviewing court will not retry defendant when considering a sufficiency of the evidence challenge).

¶ 35    Defendant finally argues that the gunshot residue evidence demonstrated that he fired a gun from his right hand, not his left hand as the officers had told the jury. Viewing the evidence in the light most favorable to the State, we find that the testimony of analyst Berk could have supported the jury's verdict. The positive presence of gunshot residue on defendant's right hand did not conclusively establish that defendant did not discharge a firearm from his left hand. Rather, the positive test allowed analyst Berk to arrive at three conclusions, one of which the jury could have determined was not inconsistent with the officers' testimony: defendant "had his right hand in the environment of a discharged firearm." Viewed in a light most favorable to the State, the jury could have found that defendant's right hand was in the environment of the firearm that defendant discharged from his left hand. *People v. Hinton*, 402 Ill. App. 3d 181, 183 (2010) (reviewing court resolves all reasonable inferences in favor of the State).

¶ 36    Defendant attempts to offer an explanation as to why his right hand tested positive for gunshot residue, namely, that the gunshot residue was transferred to his right hand when he discharged his gun in an attempt to rob his victim before encountering the officers. The gunshot residue issues presented in this case were extensively litigated, and the jury answered in the negative the question of whether defendant's hypothesis of innocence raised reasonable doubt of his guilt. See *Milka*, 336 Ill. App. 3d at 228.

¶ 37    Defendant further argues that the combination of the officers' testimony about the location of defendant's hand when he fired the shot and positive presence of gunshot residue on his right hand raises reasonable doubt of his guilt. But any inconsistency, as to the location of defendant's right hand when he fired his gun and, moreover, whether there was a connection between such an inconsistency and the gunshot residue evidence that raised reasonable doubt, was simply decided against defendant. *Gray*, 2017 IL 120958, ¶ 47 (contradictory testimony does not necessarily destroy the credibility of a witness, and it was the task of the jury to determine if the officers testified truthfully (citing *Sparling v. Peabody Coal Co.*, 59 Ill. 2d 491, 498-99 (1974)); *Wheeler*, 226 Ill. 2d at 114-15.

¶ 38    We disregard defendant's argument that Officer Iza had a "significant incentive to lie" because he "had to justify the fact that he shot [defendant] from behind" in order to survive an Illinois Police Review Authority investigation and keep his job. Defendant advances this

argument without citation to the record and has failed to show that even the most basic foundational requirements necessary to question Officer Iza about such an investigation were satisfied in the trial court.

¶ 39    The evidence was not so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Gray*, 2017 IL 120958, ¶ 35. Our review of the officers' eyewitness testimony does not compel the conclusion that the jury's verdict was unreasonable. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt may testimony be found insufficient to convict). Accordingly, the evidence presented at defendant's trial was sufficient to convict defendant of both counts of aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)).

¶ 40    We now turn to consider defendant's argument that Officer Iza's and technician Huels's testimony regarding the bullet hole in the siding of the garage was irrelevant and prejudicial. We review the trial court's decision for an abuse of discretion. *People v. Morris*, 2013 IL App (1st) 111251, ¶ 85 (the admissibility of evidence lies within the sound discretion of the trial court).

¶ 41    We hold that the trial court did not abuse its discretion when it allowed Officer Iza to testify about the bullet hole. Officer Iza's testimony was relevant and admissible. Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *People v. Pikes*, 2013 IL 115171, ¶ 21; Ill. R. Evid. 401 (eff. Jan. 1, 2011). Officer Iza testified that defendant fired one shot in a northerly direction and that he later observed a hole in the siding of a garage that was consistent with the trajectory of the bullet discharged from defendant's gun. This evidence was relevant and probative of the direction of the bullet discharged from defendant's gun.

¶ 42    Moreover, the testimony was admissible. It was (1) rationally based on Officer Iza's perception; (2) helpful to a clear understanding of his testimony and the determination of whether defendant discharged a firearm in his direction or the direction of Officer Debose; and (3) not based on scientific, technical, or other specialized knowledge. Ill. R. Evid. 701 (eff. Jan. 1, 2011); *People v. Stokes*, 95 Ill. App. 3d 62, 66 (1981) (police officer's opinion as to the trajectory of gunshot and as to the point of origin of the gunfire clearly based upon observation of the scene of the crime and within the realm of perception of which the average man is capable). The trial court did not err in admitting this testimony into evidence.

¶ 43    The trial court also did not err when it allowed Officer Iza and technician Huels to testify that the hole in the garage appeared to have been created by a bullet. See *People v. Ortiz*, 96 Ill. App. 3d 497, 504 (1981) (although detective was not qualified as a ballistics expert, he was qualified to testify that certain holes in a wall, the ceiling, and a curtain appeared to be bullet holes). Defendant argues that Officer Iza and technician Huels should not have been allowed to testify that the bullet hole was "fresh" and free of "rust or debris" because "aluminum does not rust." However, this argument is unavailing, as it was based on research absent from the record and not presented at his trial.

¶ 44    We hold that the trial court's decision to admit the photograph of the bullet hole into evidence was not an abuse of discretion. The photograph was relevant in light of Officer Iza's testimony and admissible given Officer Iza's and technician Huels's identification of the photograph as a fair and accurate representation of what they personally observed in the garage at the scene. *People v. Martinez*, 371 Ill. App. 3d 363, 380 (2007) (photographs are admissible

if identified by a witness who has personal knowledge of the subject matter and testifies that the photograph is a fair and accurate representation of the subject matter at the relevant time).

¶ 45    We turn to consider defendant's argument that the trial court's failure to exclude the evidence was an abuse of discretion. "[A] trial court may exercise its discretion to exclude evidence, even when it is relevant[,] if its prejudicial effect substantially outweighs its probative value." (Internal quotation marks omitted.) *People v. Wilcox*, 407 Ill. App. 3d 151, 169 (2010); Ill. R. Evid. 403 (eff. Jan. 1, 2011). Here, the probative value of the evidence in demonstrating the direction of the bullet that Officer Iza saw defendant discharge from his gun substantially outweighed any danger of unfair prejudice. Accordingly, defendant's argument fails.

¶ 46    Lastly, we note that Officer Iza had a basis for testifying that the bullet hole in the garage was *consistent* with the trajectory of the bullet discharged from defendant's gun and that the bullet hole was created by *a gun* but he lacked the personal knowledge necessary to testify that the bullet hole was created by the bullet discharged from *defendant's gun*. *Martinez*, 371 Ill. App. 3d at 380 (testimony must be based upon personal knowledge). However, the jury was free to accept or reject Officer Iza's testimony as credible or incredible given his testimony on cross-examination that he "had no way of knowing" whether the hole was created by the bullet discharged from defendant's gun. *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 44 (credibility of witnesses is within the province of the trier of fact). The jury was further informed of Officer Iza's lack of knowledge when technician Huels admitted that he did not access the garage or recover the bullet.

¶ 47    Further, any error in the trial court's allowing Officer Iza to testify that the bullet hole was created by the bullet fired from defendant's gun was harmless in light of the other testimony of Officer Iza and Officer Debose that the jury found to be credible. There is no reasonable probability that the jury would have acquitted defendant if the testimony of Officer Iza as to how the bullet hole came to be had not been admitted into evidence and not presented to the jury. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 104 (evidentiary error is harmless where there is no reasonable probability that the jury would have acquitted defendant absent the error).

¶ 48    Defendant argues that the trial court violated his constitutional right to cross-examine Officer Debose when it sustained the State's objection to his question of whether the surveillance video depicted defendant running with his hands near his waistband. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8.

¶ 49    On direct examination, Officer Debose testified that defendant was running with his arms at his waistband "like he had something there." He also discussed the events that unfolded on the surveillance video, from his perspective, as it was played for the jury. On cross-examination, defendant asked Officer Debose if the video showed defendant running with his hands near his waistband. The State objected, and the trial court sustained the objection because the video "speaks for itself." Defendant challenges this ruling.

¶ 50    A criminal defendant's constitutional right to confrontation includes the right to cross-examine. *People v. Blue*, 205 Ill. 2d 1, 12 (2001) (citing *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). " 'The confrontation clause guarantees the *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and whatever extent, the defense [may] wish.' " (Emphasis in original.) *People v. Jones*, 156 Ill 2d 225, 243-44 (1993) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). A trial court is

afforded broad discretion to limit the scope of cross-examination, and its restriction of cross-examination will not be reversed absent an abuse of that discretion. *People v. Palmer*, 2017 IL App (1st) 151253, ¶ 25.

¶ 51    Defendant concedes that he failed to raise his argument in a posttrial motion. However, he seeks review under the constitutional-issue exception, which allows a reviewing court to consider a constitutional issue that was (1) properly raised in the trial court and (2) may be later raised in a postconviction petition. See *People v. Cregan*, 2014 IL 113600, ¶ 16. The State accepts defendant's concession and contends, separately, that we are unable to review his argument because he failed to make an offer of proof in the trial court. *People v. Way*, 2017 IL 120023, ¶ 33 (an offer of proof enables a reviewing court to determine whether a trial court's exclusion of evidence was improper). Defendant counters, arguing that he was not required to make an offer of proof (*People v. Lynch*, 104 Ill. 2d 194, 202 (1984) (formal offer of proof not necessary if question shows the purpose and materiality of the evidence, is in a proper form, and clearly admits of a favorable answer)) but argues, in the alternative, that he can establish plain error and requests that we review his arguments under that doctrine.

¶ 52    Defendant's argument does not fall under the constitutional-issue exception because he did not *properly raise* a constitutional issue in the trial court. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 51. In fact, he failed to provide any reason why the trial court should have allowed him to question Officer Debose as to what the video depicted. *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 79. Accordingly, defendant's argument is forfeited.

¶ 53    As a separate matter, defendant's failure to make an offer of proof in the trial court has precluded our review of his argument. *People v. Baldwin*, 2014 IL App (1st) 121725, ¶ 53 (the purpose of an offer of proof is to disclose to the trial court and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of the evidence was proper). The question directed to Officer Debose did not clearly admit a favorable answer because the video is unclear. We decline to venture a guess as to how Officer Debose would have answered defendant's question and, thus, cannot determine whether trial court's decision to exclude the testimony was proper.

¶ 54    But even if defendant had made an offer of proof in the trial court, he would not succeed on plain error review. Under the closely balanced prong of plain error review, the defendant must show prejudicial error. *People v. Lewis*, 2015 IL App (1st) 130171, ¶ 31. The defendant bears the burden of persuasion with respect to prejudice. *Id.* Defendant's theory of the case was not that he never possessed a gun, or that the gun recovered at the scene was not his own, but, rather, that there was reasonable doubt he fired his gun at the officers. At oral argument, defendant even conceded that there was no question he had a gun. Defendant, therefore, suffered no prejudice as a result of the jury not having heard Officer Debose allegedly contradict himself about the location of defendant's hands *before defendant ran into the vacant lot, pulled his gun, and fired it at the officers*. Accordingly, even if defendant's argument was reviewable, it would fail plain error review.

¶ 55    Finally, defendant argues that the prosecutor's closing arguments deprived him of a fair trial and focuses on the following comments: (1) the gunshot residue kit administered to defendant indicated that he was left-handed, (2) the presence of two unique gunshot particles on defendant's left hand were consistent with having fired a gun from his left hand, and (3) Officer Iza and Officer Debose were brave.

¶ 56    The parties agree that defendant properly preserved the prosecutor's first comment for review by objecting in the trial court and raising the argument in his posttrial motion. *People v. Willis*, 409 Ill. App. 3d 804, 812 (2011) (preservation of error requires defendant to object at trial and raise error in a written posttrial motion). However, the State argues, and defendant openly admits, that he forfeited his challenges to the remaining comments made by the prosecutor by failing to object to them at trial. *Id.* Defendant therefore seeks plain error review. *People v. Herron*, 215 Ill. 2d 167, 178 (2005) (the plain error doctrine allows a reviewing court to reach a forfeited error affecting substantial rights).

¶ 57    We review the prosecutor's first comment *de novo* and the remaining comments under the plain error doctrine. *Wheeler*, 226 Ill. 2d at 121 (whether statements made by a prosecutor at closing argument warrant a new trial is a legal issue this court reviews *de novo*); *People v. Belknap*, 2014 IL 117094, ¶ 48 (forfeited errors are reviewable under the plain error doctrine).

¶ 58    A prosecutor is given great latitude in making closing arguments and may comment on the evidence and all reasonable inferences stemming from the evidence. *People v. Smith*, 195 Ill. 2d 179, 200 (2000). Closing arguments must be viewed in their entirety, and the allegedly erroneous argument must be viewed contextually. *People v. Blue*, 189 Ill. 2d 99, 128 (2000). A prosecutor's comments in closing argument will result in reversible error only when they engender substantial prejudice against a defendant to the extent that it is impossible to determine whether the jury's verdict was caused by the comments or the evidence. *People v. Caffey*, 205 Ill. 2d 52, 131 (2001).

¶ 59    Defendant first challenges the prosecutor's comment made during the following exchange:

"MS. MULAY [(ASSISTANT STATE'S ATTORNEY)]: "Do you want to know another piece of circumstantial evidence? They tell you he shot with his left hand, the officer did. He shot with his left hand. And that gunshot residue kit, there is a question there of [defendant]. What hand are you? The answer. In that gunshot residue test his left hand"

MR. KOSTOUROS [(DEFENSE ATTORNEY)]: Objection [Y]our Honor, there is no evidence of this.

THE COURT: I agree, objection sustained.

MR. KOSTOUROS: I ask that be stricken [Y]our Honor.

THE COURT: Objection sustained. The jurors will disregard the comments. Sustained."

¶ 60    The State concedes that there was "no testimony that defendant admitted to Officer Elizabeth Dawson (the evidence technician who administered the gunshot residue test to defendant) that [defendant] was left-handed." Given the State's concession, the parties direct their arguments to whether the trial court's decision to instruct the jury to disregard the prosecutor's comment cured the error. Unsurprisingly, the State argues that trial court cured the error, while defendant argues that the error was of such magnitude that it could not have been cured by an instruction to disregard the comment.

¶ 61    But the parties' arguments, and the State's concession, highlight their failure to recognize an important point: the gunshot residue test kit was in evidence when the prosecutor made her comment. The State and defendant stipulated, in writing, to the admission of the gunshot residue test kit into evidence: "People's Exhibit No. 5." The parties' stipulation included the

following statement: "Prior to administering the test, Officer Dawson asked [defendant] certain background and biographical information that she recorded on the test packet."

¶ 62 Whether the gunshot residue test kit contained the question of defendant's handedness and his answer that he was left-handed is unknown because defendant did not include "People's Exhibit No. 5" in the record. *People v. Carter*, 2015 IL 117709, ¶ 19 (defendant has the burden to present a sufficiently complete record to support claim of error). Without the information contained in "People's Exhibit No. 5," we are unable to determine whether the prosecutor properly or improperly commented on the evidence. Accordingly, there is no basis for holding in defendant's favor, and his argument must fail.

¶ 63 Defendant argues that the prosecutor materially misstated, or overstated, the scientific evidence presented by analyst Berk in her closing argument. The State, counters arguing that the prosecutor's comments were based upon the evidence and reasonable inferences drawn from the evidence. Under plain error review, we are first required to determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 64 We initially note that, as part of his argument, defendant references Federal Bureau of Investigation studies that are absent from the record. *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 97 (purpose of appellate review is to evaluate the record presented in the trial court, and review must be confined to what appears in the record). Moreover, defendant did not present or make an argument based on these studies to the jury. *People v. Bowens*, 407 Ill. App. 3d 1094, 1110 (2011) (to preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion). Defendant's argument is forfeited.

¶ 65 Defendant challenges the prosecutor's reference to the "presence of residue on both hands" and her comment that the "unique particles on the left hand" were "corroborative" of Officer Iza's and Officer Debose's testimony. We find that the prosecutor's reference and comment were reasonable inferences drawn from the evidence. *People v. Austin*, 2017 IL App (1st) 142737, ¶ 54 (prosecutor may comment on reasonable inferences that the evidence yields). Analyst Berk testified that the positive presence of gunshot residue allowed him to conclude that defendant's right hand may have been in the environment of a firearm that was discharged. Officer Debose testified that he saw defendant's right hand covering his left wrist after he heard defendant discharge his firearm, not to mention that analyst Berk testified that the paper bags placed on the defendant's hands after the shooting could "take the residue away" and that "if you put your hands in your pockets, if you wash your hands, if you simply come into contact with different surfaces you'll lose the residue to those surfaces." In light of this testimony, the prosecutor's comments were not improper.

¶ 66 Next, defendant challenges the prosecutor's comment that the presence of two unique gunshot residue particles on defendant's left hand was "hardly a negative." We find no impropriety here. The comment was a reasonable inference from the evidence that was made immediately after the prosecutor's restatement of the results of analyst Berk's analysis as he presented it to the jury. *People v. Temple*, 2014 IL App (1st) 111653, ¶ 81 (comment was not improper where prosecutor stated evidence exactly as it was presented to the jury and drew a reasonable inference from the evidence). Similarly not improper was the prosecutor's comment that she believed that the results of analyst Berk's analysis were "consistent" with defendant having discharged a firearm. The prosecutor restated the evidence as it was presented to the jury before drawing this conclusion. *Id.*

¶ 67    The prosecutor's comment, that the presence of two unique gunshot residue particles on defendant's left hand was "certainly[,] I submit to you[,] consistent with having fired a gun from his left hand," was not improper. It is clear from the record that analyst Berk drew no conclusions from the presence of two unique gunshot residue particles on defendant's left hand and was careful in confining his testimony to his positive finding: "All I can say is the right hand testified positive and that indicates to me the 3 possibilities of why it's positive." However, when analyst Berk explained to the jury what is required to find a positive presence of gunshot residue, generally, he made the following statements:

> "MR. BERK [(TRACE EVIDENCE ANALYST)]: In order for me to find positive presence [sic] of gunshot residue, I need to find 3 of those unique particles. I also expect to find consistent particles and when in fact I do find at least those *two unique particles* I'm able to say that we have a positive test result and that indicates to me the individual typically has either discharged a firearm, has contacted an item that had primer gunshot residue on it or his hands were in the environment of a discharged firearm." (Emphasis added.)

¶ 68    In light of this testimony, the prosecutor's comment was not an improper overstatement or misstatement of the evidence. See *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 144 (restatement of what expert witness stated not improper comment). Having found no error, our analysis under the plain error doctrine stops, and defendant's argument fails. *People v. Calhoun*, 404 Ill. App. 3d 362, 382 (2010) (where there is no error, there can be no plain error).

¶ 69    Finally, defendant argues that the prosecutor's comment that Officer Iza and Officer Debose were "brave" served to inflame the passion of the jury and improperly bolstered their credibility. As defendant admits, he did not preserve this argument for review. We therefore review his argument for plain error and first determine whether an error occurred. *Lewis*, 234 Ill. 2d at 43.

¶ 70    We find no error in the prosecutor's statement to the jury that the officers were brave. First, defendant's argument that the prosecutor vouched for the officers' credibility has no basis. Defendant cites *People v. Williams*, 2015 IL App (1st) 122745, in support of his argument, but in *Williams*, the prosecutor sent the message to the jury that "the State's Attorney would not put an untruthful witness on the stand." *Id.* ¶ 17. A prosecutor's comment that a police officer is brave sends no such message to the jury.

¶ 71    This is not the first time a prosecutor has characterized police officers or their actions as brave. See *People v. Walker*, 259 Ill. App. 3d 98, 105 (1993) (finding no error where prosecutor commented during closing argument that " 'we look at police officers as being big and strong and brave and somehow magical' " and " '[w]e learn from our families to trust them and respect them' "). The prosecutor's comment was not improper. Having found no error, defendant's argument fails. *Calhoun*, 404 Ill. App. 3d at 382.

¶ 72                                    CONCLUSION
¶ 73    Accordingly, we affirm.

¶ 74    Affirmed.

- 13 -